IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, 31 Hopkins Plaza, Suite 1432 Baltimore, MD 21201<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THOMAS B. FINAN CENTER, MARYLAND DEPARTMENT OF HEALTH, 10102 Country Club Rd. SE, Cumberland, MD 21502<br><br><br><br>　　　　Defendant. | Civil Action No.<br><br><br><br>COMPLAINT<br><br><br>JURY TRIAL DEMAND |

## NATURE OF THE ACTION

This is an action under the Equal Pay Act of 1963 to restrain the unlawful payment of wages to employees of one sex at rates less than the rates paid to employees of the opposite sex, and to collect back wages due to employees as a result of such unlawful payments. The United States Equal Employment Opportunity Commission ("the EEOC" or the "Commission") alleges that Defendant, Thomas B. Finan Center, Maryland Department of Health ("Defendant" or "Finan"), discriminated against Therapeutic Recreator II Tiffany Johnson and a class of aggrieved female employees by paying them lower wages than those paid to their male counterpart for performing equal work.

## JURISDICTION AND VENUE

1.　　Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 16(c) and 17 of the Fair

Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217, to enforce the requirements of the Equal Pay Act of 1963, codified as Section 6(d) of the FLSA, 29 U.S.C. § 206(d).

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland, Northern Division.

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of, inter alia, the Equal Pay Act, and is expressly authorized to bring this action by Sections 16(c) and 17 of the FLSA, 29 U.S.C. §§ 216(c) and 217, as amended by Section 1 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and Public Law 98-532 (1984), 98 Stat. 2705.

4. At all relevant times, Defendant has continuously been a psychiatric facility in Alleghany County in the State of Maryland.

5. At all relevant times, Defendant has acted directly or indirectly as an employer in relation to employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

6. At all relevant times, Defendant has continuously been a public agency within the meaning of Sections 3(x) of the FLSA, 29 U.S.C. § 203(x).

7. At all relevant times, Defendant has continuously been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Sections 3(r) and (s) of the FLSA, 29 U.S.C. §§ 203(r) and (s), in that said enterprise has continuously been an enterprise that has employees engaged in an activity of a public agency.

## STATEMENT OF EQUAL PAY ACT CLAIMS

8. Since at least December 4, 2019, Defendant has violated Sections 6(d)(1) and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206(d)(1) and 215(a)(2), at the Thomas B. Finan Center by paying Tiffany Johnson and a class of aggrieved female employees lower wages than those paid to their male colleague for performing equal work as a Therapeutic Recreator ("TR").

9. Defendant knowingly and willfully violated the Equal Pay Act by accelerating male comparator William Harvey ("Harvey") through successive noncompetitive hires and promotions into higher paying positions, including Therapeutic Recreator I ("TRI"), and Therapeutic Recreator II ("TRII"), positions for which he was not qualified, to give him, a male, the advantage of the State of Maryland's Salary Guidelines for the Standard Pay Plan ("Salary Guidelines"), which sets starting salaries in covered positions entirely based upon promoted or transferred employees' prior salaries. As a result, an unqualified male not fully performing the duties of TR positions has at all times earned more than all female TRIIs, who at all times were qualified for the position, had more tenure in the position, and in half of individual cases had more Maryland state government tenure than the male. Indeed, even while employed in subordinate positions supervised by the female TRIIs, the male earned more than the females.

10. Defendant refused to compensate the female TRIIs equal to the male's pay, even after the unequal pay was brought to management's attention in more than one complaint and meeting. On the other hand, when a new female TRII was hired above starting base rate due at least in part her prior salary, Defendant gave the females an equitable salary adjustment in order to bring their salaries equal to the new female hire's.

11. Separate and apart from Defendant's discriminatory favoritism to the male, to any extent the pay inequity was mandated by the Salary Guidelines, which rely solely on prior salary

with no available redress for the female TRIIs, thus mandating unequal pay for equal work, Finan violated the Equal Pay Act when it applied the Salary Guidelines to the TRs' salaries.

The Location and Work

12.	The Thomas B. Finan Center in Cumberland, Maryland, a multi-purpose psychiatric facility of the Maryland Department of Health operating 88 beds, is a primary inpatient component of the Maryland Department of Health and Mental Hygiene serving the citizens of Maryland. Specialized evaluation and treatment services are available for patients of all ages with mental illness. Patients reside in a number of small cottages on site.

13.	During most of the period at issue, the cottages were staffed by a Therapeutic Recreator Supervisor ("TR Supervisor"), TRIs and TRIIs at State of Maryland Standard Salary Structure Grade 12 or 13, and several levels of Activity Therapist Assistants ("ATA"s) at Salary Grades 8 and 9.

14.	TRs I and II are responsible for assessing, planning, implementing and performing therapeutic recreation in the treatment of mentally ill, aged, physically ill, or physically disabled patients or developmentally disabled clients in State treatment facilities or community-based programs.

   a.	Therapeutic Recreator I is the entry-level TR position.  TRIs assess, plan, implement, and perform therapeutic recreation in the treatment of mentally ill, aged, physically ill, or physically disabled patients or developmentally disabled clients in state treatment facilities or community-based programs. They perform their duties under close supervision at times and with general supervision at other times depending on the complexity of the duty being performed. TRIs have no supervisory duties.

  b. Therapeutic Recreator II is the full performance level of the TR position. This position may oversee the work of Activity Therapy Associates, TRIs in training, students, and volunteers assigned to the recreation therapy program as well as perform the duties a TRI performs. Each TRII is assigned to a cottage but does not specialize in the type of patients residing at any given cottage. Due to the variability of TR duties, including covering other TRs' shifts, the duties, skills required, work hours, and levels of responsibility of the individual TRIIs are not distinguishable.

  c. TRI and TRII are differentiated by the degree of supervisory control exercised by the supervisor over the therapeutic recreator. TRIIs perform the full range of TR duties and responsibilities but under only general supervision, and often provide close supervision over TRIs.

  d. The minimum education requirement for a TR position is a bachelor's or master's degree in therapeutic recreation or recreation with a major in therapeutic recreation from an accredited college or university. If an applicant does not possess the minimum education requirement, the following may be substituted for the education requirements: (a) current certification as a Therapeutic Recreator from the National Council for Therapeutic Recreation Certification; or (b) experience as a professional therapeutic recreator, under the supervision of a licensed Occupational Therapist, licensed Physical Therapist or certified Activity Therapist, which include the responsibility for clients' assessments and the planning, implementation and evaluation of clients' recreation therapy in a mental health or developmental disability setting. Experience assisting in these responsibilities is not accepted as qualifying experience; or (c) equivalent experience as a commissioned officer in Physical Therapy classifications or Physical Therapist and Medical Specialist specialty codes.

e. All of the female employees had one or more of the aforementioned minimum requirements for the TR position.

The Class and Comparator

15. During the period at issue Defendant had, and continues to have, five TRs—four females and one male. In the order of his or her date of entry into Defendant's TR position, they are:

a. Amy Johnson (f/k/a Amy Thomas). Amy Johnson earned her Bachelor of Science in Therapeutic Recreation in July 2011 and throughout her education, devoted numerous clinical hours to this practice. Shortly after graduation, she worked with children with autism providing therapeutic support and facilitating behavioral interventions. She joined Defendant as a TRI in January 2012. She advanced to TRII in October 2012.

b. Megan Poland (f/k/a Megan Broadwater) received her Bachelor of Science degree in Therapeutic Recreation in December 2009. For four summers, spanning her education and thereafter, she served as the Program Director for a TR camp operated by Howard County government, serving children, adolescents, and adults with developmental and physical disabilities, and training staff to work with this population. After receiving her degree through June 2010, she worked as an Assistant Activity Director for a senior living community. She then became an Activity Director for a medical adult daycare center until December 2010. She then worked as a TR for University Specialty Hospital in Baltimore until June 2011, when she became a Maryland State employee in August 2011 and was hired as a TRI for Eastern Shore Hospital. In August 2012, she transferred to Defendant as a TRII.

c. Tiffany Johnson (f/k/a Tiffany See), the charging party, holds a Bachelor of Science degree in Therapeutic Recreation which she earned in May 2015. In summer 2014, she worked as

a certified Homemaker's Aid where she provided in-home health care and assisted patients with activities of daily living and she remained in this position part-time until joining Defendant. During this time, she also worked as a Behavioral Health Specialist while serving in the National Guard. There, her duties included assisting with the management and treatment of inpatient and outpatient mental health activities including counseling clients with personal, behavioral, and psychological problems. For four months prior to graduation, she interned with Defendant. After her graduation, in June 2015 she became a permanent TRI for Defendant and in July 2016 became a TRII.

     d.     Kimberly Glotfelty ("Glotfelty") joined Defendant in May 2019. After earning her Bachelor of Science degree in 1997, she worked as a Recreation Therapist Director for a Rehabilitation and Nursing Center and then as an Activities Director for a continuing care community. In those roles, she managed the programs and staff of the recreational therapy department, planned and implemented guidelines for recreational therapy programs, and conducted patient programs. She eventually became a TR with Western Maryland Health Systems where she continued to work as a TR for over 17 years. Defendant hired her as a TRII.

     e.     William Harvey joined Defendant as a TRI in November 2019, making him the least senior of the TRs. He holds a Bachelor of Science degree in Recreation and Parks Management. Frostburg State, where Harvey obtained his degree, describes this program as "great preparation for a career as a park ranger, program staff at a resort, campus recreation staff, sports promotion specialist, camp director, or an adventure sports specialist." While obtaining this degree, he worked as a summer lifeguard in a state park, and thereafter seasonally for the YMCA, first as a student intern for fall 2009, then as a program specialist, and then as an assistant program director. He serviced a population of YMCA guests, for whom he developed and delivered programs "such as, archery, rifle, shotgun, pontoon tours, bingo, kite making and rocket building

7

and launch." Shortly after serving as assistant program director, he became the aquatics director for the summer of 2011. He spent less than two years at YMCA, where his employment, on information and belief, was seasonal. Thereafter, he worked for less than two years as a shift leader and cook for a Ruby Tuesday restaurant. In November 2013, he joined the State of Maryland as a Recreational Specialist for the Department of Juvenile Services and remained there for the next five years.  Neither Harvey's degree nor his experience thus qualified him for a TR position under the state requirements. In November 2018, former Finan CEO John Cullen ("Cullen"), hired Harvey as an Activity Therapy Assistant ("ATA") II.

Defendant's Willful Creation and Maintenance of Unequal Pay

16.     The ATA II position (Salary Structure Grade 8) for which Harvey was hired in 2018 is a lower classified position than that of TR. In fact, the ATA is guided by the TR in the course of TR treatment. Despite this, Defendant hired him at a starting salary of $41,346 (Step 19 within the ATA pay grade), which was more than Defendant paid any of the then-three TRIIs Tiffany Johnson, Megan Poland, and Amy Johnson at the time in their positions rated at Salary Structure Grade 12.

17.     In May 2019, Finan hired Kimberly Glotfelty as a TRII at a salary of $43,246. Pursuant to equitable salary adjustment permission in the Salary Guidelines, Finan raised the other three (then all female) TRIIs' salaries to Glotfelty's.

18.     Immediately upon completing his approximately 6-month probationary period in or around July 2019, Finan CEO John Cullen, HR Director Chris Loney ("Loney"), and former TR Supervisor Melissa Nething ("Nething") granted Harvey a non-competitive promotion to ATA III at a salary of $46,464, which was again more than Finan paid any of the four female TRIIs at the time.

19. Almost immediately, Harvey applied for a TRII position. On information and belief, Defendant did not select Harvey for the position because he was not qualified.

20. In the fall of 2019, TR Supervisor Nething stepped down to accept a promotion to Director of Rehabilitation, leaving the TR Supervisor position vacant. One or more of the female TRIIs expressed an intention of competing for the position, and one or more of the females took or made plans to take the formal training the position required in preparation for competing for the position.

21. Instead of posting the vacancy, however, Cullen, Loney, and Nething agreed amongst themselves not to fill the TR Supervisor position and instead fill the billet as an unadvertised TRI vacancy into which they noncompetitively appointed Harvey, now at the rate of $52,133, which again was more than Finan paid any of the incumbent female TRIIs, who now supervised Harvey in his new position.

22. As described above, Harvey did not even meet the minimum state-required qualifications for the TRI position at the time. Prior experience as an ATA does not count under the job requirements as an alternative path to qualification. The four female TRIIs were tasked with training Harvey to perform the position.

23. Confronted by Amy Johnson and Megan Poland about the elimination of the TR Supervisor position, Cullen told them, "If I had given one of you the position, you are both young ladies, you would have been in the position for 30 years and it would have been 30 more years before we could get rid of the position."

24. The elimination of the TR Supervisor position also eliminated the only avenue of career promotion for the female TRIIs. Nonetheless, when Nething accepted her new role, she delegated a number of her TR Supervisor duties to the female TRIIs, who continued to perform

them as well as their TRII duties while being paid less than the male whom they functionally supervised.

25.     In December 2020, Finan gave Harvey a noncompetitive promotion to TRII at an annual salary of $57,213, which was and continues to be more than Finan pays any of his fellow female TRIIs.

26.     Harvey did not possess the minimum state-required qualifications to become a TRII, and the four female TRIIs were required to train him in the position.

27.     Harvey was promoted to TRII faster than any of the females, having been promoted three times in 13-month period. While holding the position of TR, he has not been assigned to a specific cottage, has enjoyed a longer period of orientation than the females, has had a lighter case load and less patient contact time than the females, and has fewer duties assessing patients and writing treatment plans. He is permitted to select which patients he will carry on his case load although the female TRs are expected to provide treatment to all the patients of their respective units. Unlike the females, he is not required to observe the formal start and leave times the females are, is not required to observe workplace rules as conscientiously as the females are, and he routinely reports significantly fewer "units" (Defendant's quantitative measure of patient care time) than the females. All four female TRs have reported these inequities at various times to Defendant but management has taken no action to rectify them.

28.     Despite requests, formal grievances, and regulatory filings from the females over the past several years, Finan has refused to raise their salaries to equal that of the higher-paid male, stating only that it is justified in paying the male what it pays him pursuant to the Salary Guidelines, based on the male's prior state government salaries. The Maryland Department of Health

erroneously told the females that their internal equal pay complaints were untimely and refused to investigate.

29. The table below displays the salaries paid by Defendant to the male and female TRs and demonstrates that Finan paid the male comparator more than his female colleagues between November 2018 and January 2021, and on information belief, continues to do so.

| Date of Male Salary Increase | Name/Position/Salary | | | | |
| --- | --- | --- | --- | --- | --- |
| | William Harvey | Amy Johnson | Megan Poland | Tiffany Johnson | Kimberly Glotfelty |
| Nov. 2018 | ATA II $41,346 | TRII $40,698 | TRII $40,698 | TRII $37,884 | N/A |
| July 2019 | ATAIII $46,464 | TRII $43,246 | TRII $43,246 | TRII $44,544 | TRII $43,246 |
| Nov. 2019 | TRI $52,133 | TRII $43,246-$44,544 | TRII $43,846-$44,544 | TRII $44,544 | TRII $43,846-$45,890 |
| Dec. 2020 (females shown for January 2021) | TRII $57,213 | TRII $45,890 | TRII $45,890 | TRII $45,890 | TRII $45,890 |

PRAYER FOR RELIEF

Wherefore, the Commission requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against females with respect to their compensation and from paying female employees lower compensation than their male comparator for performing equal work.

B. Order Defendant to institute and carry out policies, practices and programs that provide equal compensation for women and eradicate the effects of its past and present unlawful employment practices.

  C.  Order Defendant to make whole the class of aggrieved female employees by providing appropriate backpay with prejudgment interest, in amounts to be proved at trial, and an equal sum as liquidated damages, as a result of the acts complained of above.

  D.  Grant such further relief as this Court deems necessary and proper in the public interest.

  E.  Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

            Respectfully submitted,

            GWENDOLYN YOUNG REAMS
            Acting General Counsel

            _____/s/_____
            DEBRA M. LAWRENCE
            Regional Attorney

            DAVID J. STAUDT (Bar ID 94299)
            Trial Attorney
            Baltimore Field Office
            George H. Fallon Federal Building
            31 Hopkins Plaza, Suite 1432
            Baltimore, MD 21201
            Phone: (410) 801-6693
            david.staudt@eeoc.gov

            ASHLEY M. MARTIN (Bar ID 313607)
            Trial Attorney
            Washington, DC, Field Office
            131 M St. NE, Suite 4NW02F
            Washington, DC 20507
            Phone: (202) 921-2766
            ashley.martin@eeoc.gov